Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KRISTIN B. and A. B., <br><br> Plaintiffs, <br><br> vs. <br><br> CIGNA HEALTH and LIFE INSURANCE COMPANY, COMPSYCH, and the NVIDIA WELFARE PLAN. <br><br> Defendants. | COMPLAINT <br><br> Case No. 1:20-cv-00148 RJS |

Plaintiffs Kristin B. and A. B. ("A."), through their undersigned counsel, complain and allege against Defendants Cigna Health and Life Insurance Company ("Cigna"), ComPsych, and the NVIDIA Welfare Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Kristin and A. are natural persons residing in Santa Clara County, California. Kristin is A.'s mother.

2. Cigna is an insurance company headquartered in Bloomfield, Connecticut and was the third party claims administrator for the Plan during the treatment at issue in this case.

1

3. ComPsych is a company based out of Illinois which administers a wide variety of Employee Assistance Programs. Prior to January 1, 2019, ComPsych administered the Plan's mental health claims. After that date, these claims were administered by Cigna.

4. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Kristin was a participant in the Plan during the time A was receiving treatment and A. was a beneficiary of the Plan at all relevant times. Kristin and A. continue to be participant and beneficiary, respectively, under the Plan.

5. A. received medical care and treatment at Elements Wilderness Program ("Elements") from November 4, 2017, to January 18, 2018, and Crossroads Academy ("Crossroads") from January 18, 2018, to February 6, 2019. These are treatment facilities located in Utah, which provide sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

6. The Plan, acting through its agents, Cigna or ComPsych, denied claims for payment of A.'s medical expenses in connection with his treatment at Elements and Crossroads. Communications with the Defendants in the pre-litigation appeal process was often carried out for Kristin and A. by Kristin's husband, A's father, David.

7. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

8. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because the Defendants do business in Utah, and the treatment at issue took place in Utah. Finally, in light of the

sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

9. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Elements

10. A. was admitted to Elements on November 4, 2017, due to unresolved trauma for sexual abuse, rampant drug use, and significant mental health and behavioral problems.

11. In a letter dated October 9, 2018, ComPsych denied payment for A.'s treatment. The letter gave the following justification for the denial:

> **Lack of Medical Necessity - Appeal was received with limited medical records. Must submit eval summary, all dates of service treatment notes and discharge summary. Once medical records are received, claim will be reviewed for reconsideration.** (emphasis in original)

12. In a letter dated November 16, 2018, ComPsych upheld the denial. The letter was signed by "Appeals Coordinator" and denied payment due to:

> **Lack of Medical Necessity - Per IRO, "The inpatient residential treatment was not medically necessary. The available evidence does not support medical necessity for inpatient residential treatment for the time period under review. The treatment notes lack sufficient detail with description or characterization of symptoms. There is no evidence to support severe psychiatric symptoms which would have required 24 hour medical and nursing supervision." No payments will be made.**

13. On December 19, 2018, David submitted a level one appeal of the denial of payment at Elements. He argued that A.'s treatment was medically necessary. David reminded ComPsych of its obligations under ERISA, such as its mandate to provide a full, fair, and thorough review, and to identify its reviewers and disclose their qualifications. David noted that while the review had ostensibly been carried out by an IRO (independent review organization), he had not been provided with a copy of the report, only a brief excerpt. He argued that this made it difficult for him to properly appeal the denial.

14. David included a copy of A.'s medical records from Elements with the appeal. He contended that A.'s treatment was medically necessary in order to effectively treat A.'s severe trauma from sexual abuse, his self-medication through illicit drug use, and his severe behavioral problems. He wrote that it was particularly difficult for someone like A. with a dual diagnosis of mental health and substance use disorders to recover without appropriate treatment.

15. David shared a 2016 report from the U.S. Surgeon General on the dangers of addiction. He stated that due to A.'s young age, it was critical for him to receive early intervention at a facility like Elements so that he could overcome his addiction and to avoid relapsing and be able to minimize the serious developmental dangers from adolescent drug use. He argued that outpatient therapy would have been insufficient as it had previously proven to be ineffective and would have left A. in an environment where he was surrounded by constant triggers, making lasting recovery almost impossible.

16. He wrote that ComPsych was requiring A. to exhibit acute psychiatric symptoms in order to qualify for a sub-acute level of care. He stated that this was contrary to generally accepted standards of medical practice. He contended that this likely violated MHPAEA

as benefits were not being administered at parity between intermediate level mental health and intermediate level medical and surgical benefits.

17. He requested that in the event that the denial was upheld that he be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the Certificate of Coverage, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, the Plan's mental health and substance abuse criteria, the Plan's skilled nursing and rehabilitation facility criteria, and any reports from a physician or other professional regarding the claim. (collectively the "Plan Documents")

18. In a letter dated February 28, 2019, ComPsych upheld the denial. The letter, again signed only by "Appeals Coordinator," stated in part:

> Upon review of your second level appeal, the denial has been upheld for: Lack of Medical Necessity (Medical records were sent to IRO for review, which was reviewed by a Board Certified Psychiatry/Child and Adolescent Psychiatry specialist. Reviewer decision was based on the InterQual Level of Case [sic] Criteria 2018 along with Milliman Care Guidelines, Behavioral Health Guidelines, 20th Edition. He also used for reference American Psychiatric Association Practice Guidelines to make his determination. Per IRO "From 11/4/17 to and including 1/18/18, the patient was not suicidal, homicidal, or gravely impaired for self-care. There is no evidence in the submitted medical records to indicate that he required around the clock nursing supervision. His psychological symptoms of depression and drug abuse could have been safely and effectively treated under a lower level of care. Therefore, the requested psychiatric residential treatment from 11/4/17 to 1/18/18 is not medically necessary." Per client's benefit plan, page 45, it states "In general, health services and benefits must be Medically Necessary". This page has been included along with this letter.) [sic] This patient's record was reviewed and the reviewer determined that dates of service 11/04/2018-01/18/2018 did not meet medical necessity.

19. In a letter dated June 26, 2019, David requested that the denial of payment be evaluated by an external review agency. He reiterated that the use of acute symptomology such as a

requirement of A. being a danger to himself or to others to qualify for subacute care was a violation of generally accepted standards of care as well as MHPAEA.

20. In a letter dated July 5, 2019, the external review agency upheld the denial of payment for A.'s treatment. The reviewer wrote in part:

> The treatment did not meet medical necessity because, according to the medical records with which I was provided, the level of care at a residential treatment facility was not clinically appropriate for the severity of symptoms with which the claimant was presenting. An alternative service at a lower level of care, such as an intensive outpatient program or a partial hospitalization program, is at least as likely to produce equivalent therapeutic results as to the claimant's diagnoses and the treatments indicated for the claimant's illnesses.

### Crossroads

21. A. was admitted to Crossroads on January 18, 2018, on the recommendation of his treatment team at Elements. A.'s Discharge Summary from Elements stated in part:

> Following Elements, [A.] would benefit most from placement in a residential treatment program. Outside of a structured and supportive treatment environment, [A.] will return to previous patterns of depression, withdrawal, substance use, oppositionality, and struggles with academics and relationships which led to his placement in wilderness therapy. … This level of care is also recommended as a result of poor response to many less restrictive treatment efforts.

22. In a letter addressed to Crossroads and dated March 26, 2019, again signed only by "Appeals Coordinator," ComPsych denied payment at Crossroads due to:

> **Lack of Medical Necessity – Records were received and sent to medical director for review.  Per Medical Director, medical records do not meet criteria for residential for dates of service 01/18-12/31/2018.[1] No payments will be made towards claims.** (emphasis in original)

23. In a letter dated April 12, 2019, Cigna denied payment for A.'s treatment at Crossroads. The denial, attributed to John Nicholls, MD, gave the following justification for the denial:

---

[1] In the header, the letter only purported to have reviewed dates between January 18, 2018, to November 30, 2018. It is unclear why the reviewer denied payment for dates which they had not reviewed.

> The clinical basis for this decision is: Based upon the clinical information, your symptoms did not meet Behavioral Health Medical Necessity Criteria for admission and continued stay at Residential Mental Health Treatment for Children and Adolescents from 01/01/2019 - 02/07/2019 as you did not have impairments in functioning across multiple settings such as work, home, school, and in the community, that clearly demonstrated a need for 24 hour skilled psychiatric and nursing monitoring and intervention. Your continued stay was primarily for the purpose of providing a safe and structured environment. Less restrictive levels of care were available for safe and effective treatment.

24. On September 11, 2019, Kristin and David appealed the denial of payment for A.'s treatment at Crossroads. They pointed out that they had received multiple denial letters for A.'s treatment and reminded Cigna of its obligation to act in their best interests and to provide them with a full, fair, and thorough review.

25. They enclosed a copy of A.'s medical records with the appeal. These records showed that A. continued to struggle with depression, obsessive compulsive behaviors, defiance, manipulative behaviors, resistance to change, ongoing desires to use drugs, a refusal to commit to sobriety, and suicidal ideation.

26. Kristin and David contended that A.'s treatment met both Cigna and the Plan's definition of medical necessity, that it was required in order to effectively treat his multiple diagnoses, and was the least intensive setting that could effectively treat A. They disputed Cigna's assertion that A.'s care was only for the purposes of providing a safe environment. They again requested to be provided with a copy of the Plan Documents.

27. After Kristin and David received no response to their level one appeal, they had a representative call on November 12, 2019, to determine the appeal status. The representative was told that no record of their September 11, 2019, appeal existed and that the appeal on record was a July 1, 2019, appeal with the incorrect dates of service listed.

28. David stated that he had never drafted a July 1, 2019, appeal for Crossroads. After being told that Cigna had not received the September 11, 2019, appeal, David resubmitted his level one appeal that same day, November 12, 2019. He included evidence that his initial appeal had been sent via certified mail and had been delivered on September 16, 2019. He requested that his appeal be correctly processed and reviewed. David received no response to this letter or to his initial level one appeal.

29. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA as far as they were able, given the Defendants' failure or refusal to process Kristin and David's level one appeal for Crossroads.

30. The denial of benefits for A.'s treatment was a breach of contract and caused Kristin and David to incur medical expenses that should have been paid by the Plan in an amount totaling over $140,000.

31. The Defendants failed to produce a copy of the Plan Documents, including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities in spite of Kristin and David's requests for those documents.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

32. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Cigna, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

33. ERISA also underscores the particular importance of accurate claims processing and

evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

34. The Summary Plan Description states in part under the heading Internal Appeals Procedure:

> To initiate an appeal, you must submit a request for an appeal in writing to Cigna within 180 days of receipt of a denial notice. You should state the reason why you feel your appeal should be approved and include any information supporting your appeal. If you are unable or choose not to write, you may ask Cigna to register your appeal by telephone. Call or write us at the toll-free number on your ID card, explanation of benefits, or claim form.
>
> Your appeal will be reviewed and the decision made by someone not involved in the initial decision. Appeals involving Medical Necessity or clinical appropriateness will be considered by a health care professional.
>
> We will respond in writing with a decision within 30 calendar days after we receive an appeal for a required preservice or concurrent care coverage determination or a postservice Medical Necessity determination. We will respond within 60 calendar days after we receive an appeal for any other postservice coverage determination. If more time or information is needed to make the determination, we will notify you in writing to request an extension of up to 15 calendar days and to specify any additional information needed to complete the review.

35. Cigna did not abide by the terms of the Plan as stated above. Cigna did not process Kristin and David's level one appeal for Crossroads, despite the fact that they submitted proof that it was delivered.

36. Cigna and the agents of the Plan breached their fiduciary duties to A. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in A.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of A.'s claims.

9

37. The actions of Cigna and the Plan in failing to provide coverage for A.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

38. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

39. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

40. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

41. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

42. The explicit language of the SPD, one of the governing plan documents, states that the Defendant will evaluate the medical necessity of treatment "in accordance with generally accepted standards of medical practice"

43. The medical necessity criteria used by the Defendants for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

44. In addition, the level of care applied by the Defendants failed to take into consideration the patient's safety if he returned to a home environment, as well as the risk of decline or relapse if less intensive care than what was medically necessary was provided. A.'s treatment team expressed significant concern at his risk of relapse were he to return home prematurely. Generally accepted standards of medical practice for medical and surgical rehabilitation under the Plan take into consideration safety issues and considerations of preventing decline or relapse when admission into an intermediate care facility, such as a skilled nursing or rehabilitation facility, is approved.

45. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for A.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment do the Defendants exclude or restrict coverage of medical/surgical conditions by imposing acute care requirements for a sub-acute level of care. To do so, would violate not only the terms of the insurance contract, but also generally accepted standards of medical practice.

46. In their review of A.'s claims, the Defendants' reviewers improperly utilized acute medical necessity criteria to evaluate the non-acute treatment that A. received. This improper use of acute inpatient medical necessity criteria is revealed in the statements in the denial letters such as the assertion that A. was "not suicidal, homicidal, or gravely

11

impaired." This improper use of acute inpatient criteria was a nonquantitative treatment limitation that cannot permissibly be applied to evaluate the sub-acute level of care that A. received. The Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits.

47. The treatment provided in an acute care environment is necessarily distinct from treatment provided in a non-acute environment. Utilizing acute criteria to evaluate a non-acute claim will result in a near universal denial of benefits, regardless of the medical necessity, clinical appropriateness, or nature of the treatment.

48. The Defendants cannot and will not deny that use of acute care criteria, either on its face or in application, to evaluate sub-acute treatment violates generally accepted standards of medical practice. They must and do acknowledge that they adhere to generally accepted standards of medical practice when they evaluate the medical necessity criteria of both mental health/substance use disorders and medical/surgical claims.

49. When the Defendants receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. The Defendants evaluated A.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

50. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Defendants, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

51. The Defendants did not produce the documents the Plaintiffs requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiffs' allegations that they were not in compliance with MHPAEA.

52. The violations of MHPAEA by the Defendants give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and other Cigna and

    ComPsych insured and administered plans as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

53. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for A.'s medically necessary treatment at Elements and Crossroads under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 30th day of October, 2020.

By    <u>s/ Brian S. King</u>
       Brian S. King
       Attorney for Plaintiffs

County of Plaintiffs' Residence:
Santa Clara County, California